**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CARMEN FLORES CASTRO,              )
                                   )
                    Petitioner,    )      Case No.: 2:18-cv-01739-GMN-CWH
          vs.                      )
                                   )              **ORDER**
BERTHA HERNANDEZ RENTERIA,         )
                                   )
                    Respondent.    )
                                   )
_____    )

Pending before the Court is Respondent Bertha Hernandez Renteria's ("Respondent's") Objection, (ECF No. 55), to the Honorable Magistrate Judge Carl W. Hoffman's November 2, 2018 Report and Recommendation ("First R&R"), (ECF No. 35). Petitioner filed a Response, (ECF No. 57).

Also pending before the Court is Respondent's Objection, (ECF No. 60), to Judge Hoffman's November 29, 2018 R&R ("Second R&R"), (ECF No. 56). Petitioner filed a Response, (ECF No. 69), and Respondent filed a Reply, (ECF No. 77).

## I.      **BACKGROUND**

This case concerns a petition to return an eight-year old child to Mexico pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"), Oct. 25, 1980, 19 I.L.M. 1501, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, governed by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.* (formerly codified at 42 U.S.C. § 11601 *et seq.*). The child involved here is Z.F.M.Z, and she presently resides in the United States with Respondent (her grandmother). Petitioner is Z.F.M.Z.'s half-sister. (Resp. at 2, ECF No. 69).

Z.F.M.Z. was born in Las Vegas, Nevada on November 23, 2009, to Rusia Michel Zamora ("Rusia"), her mother, and Raul Flores Hernandez ("Raul"), her father. (*Id.*). Rusia and Raul thereafter returned to Mexico with Z.F.M.Z. (Trial Tr. 70:7–21, ECF No. 47). In Mexico, Z.F.M.Z. lived primarily with Rusia, and part of the time with Raul. (*Id.* 117:21–118:23). In April of 2014, however, Rusia disappeared, and the facts in this case do not reveal the cause of that disappearance. (*Id.*).

**A. Raul and Petitioner Seek Custody over Z.F.M.Z.**

After Rusia's disappearance, Raul and Respondent both cared for Z.F.M.Z. through an informal arrangement. (*Id.* 121:14–122:17). More specifically, around 2016, Respondent cared for Z.F.M.Z. on the weekdays, and Raul cared for her on the weekends. (*Id.*). Z.F.M.Z. would also spend time with Petitioner. (*Id.* 54:24–55:23).

In May of 2017, Raul and Petitioner initiated custody proceedings against Respondent before a judge in the Sixth Judicial District Court of the State of Jalisco, Mexico ("Jalisco court"). (Second R&R 3:13–14). Raul received custody over Z.F.M.Z, on May 8, 2017, for the pendency of those custody proceedings. (*Id.*); (Trial Tr. 72:12–20); (Interlocutory Sentence at 2, Ex. 2 to Petitioner's Resp. (Trial Exhibit 7), ECF No. 69-3). Nevertheless, Z.F.M.Z. resided with Petitioner and her family on the weekends and some weekdays, and other times with Raul. (Trial Tr. 23:20–25, 27:1–4). That arrangement ended when Raul was arrested upon allegations of drug trafficking, after which, according to Petitioner's testimony, Raul informally gave Petitioner custody over Z.F.M.Z. (*Id.* 72:12–22); (Second R&R 4:3–4).

As the custody proceedings continued in the Jalisco court, Respondent received short-term "provisional custody" allowing her to take Z.F.M.Z. to be interviewed by a psychologist. (Official Communication at 6, Exhibit 11 to Petitioner's Resp. (Trial Exhibit 19), ECF No. 69-12). That term of provisional custody was initially set for August 11, 2017, to August 18, 2017, when another custody hearing was to take place. (*Id.*). However, after Respondent

appeared at the August 18, 2017 hearing without Z.F.M.Z. and without a psychological report, Respondent received an extension of provisional custody to September 8, 2017. (*Id.*). Respondent was not allowed to leave the State of Jalisco or Mexico with Z.F.M.Z. during those times. (Second R&R 4:15–19) (citing Trial Exhibits 12 and 14).[1]

### B. Respondent and Z.F.M.Z. Travel to the United States

On August 30, 2017, Petitioner informed the Jalisco court that Respondent had left Mexico with Z.F.M.Z. (Second R&R 4:20–21) (citing Trial Exhibit 14); (Resp. at 6, ECF No. 69) (citing Trial Exhibits 8 and 9). That same day, the Jalisco court entered an Order prohibiting Respondent from leaving Mexico with Z.F.M.Z., set a hearing for September 8, 2017, and authorized a warrant for Respondent's arrest. (Jalisco Court Order at 3, Ex. 8 to Petitioner's Resp. (Trial Exhibit 14), ECF No. 69-9); (Official Communication at 6, Exhibit 11 to Petitioner's Resp. (Trial Exhibit 19), ECF No. 69-12). Respondent, however, failed to appear at the September 8, 2017 hearing. (Second R&R 5:3–5) (citing Trial Ex. 19 at Castro 000139). The Jalisco court then received a letter on September 13, 2017, from Respondent, stating that she would be staying in the United States indefinitely with Z.F.M.Z. (*Id.*). Moreover, as of August 31, 2017, Respondent had enrolled Z.F.M.Z. in a Las Vegas, Nevada elementary school. (Trial Tr. 139:15–141:10).

On July 4, 2018, Petitioner filed an initial application for the return of Z.F.M.Z. with the Jalisco court, naming the Jalisco court judge as the petitioner. (Second R&R 5:19–21); (Compl. at 6, ¶ 29, ECF No. 1). That application was returned, however, as needing more information. (Compl. at 6, ¶¶ 29–30). Petitioner then submitted a complete application to the Mexican Central Authority on August 20, 2018. (*Id.*). About three days later, the United States Department of State received that application. (*Id.*).

---

[1] The Second R&R includes additional, detailed factual findings; and this Order accepts and incorporates those findings to the extent that no party objected to them. Thus, the Second R&R provides background information to supplement the facts stated in this Order.

**C. Petitioner Files a Complaint in This Court Pursuant to the Hague Convention**

On September 7, 2018, Petitioner filed her Complaint with the Court, (ECF No. 1), seeking the return of Z.F.M.Z. to Mexico pursuant to the Hague Convention. Roughly eight days later, upon Petitioner's emergency request, the Court imposed a temporary restriction on Respondent from leaving the Court's jurisdiction with Z.F.M.Z. (Order 1:22–25, 3:7–4:4, ECF No. 4). On September 21, 2018, the Court extended that restriction for the remainder of the case. (Mins. Proceedings, ECF No. 7).

During a case-management conference on September 26, 2018, the Court imposed a visitation schedule, which declared that, "[p]ending the conclusion of this case," Petitioner could exercise visitation with Z.F.M.Z. "every weekend from 9:00 a.m. on Saturdays to 5:00 p.m. on Sundays." (Scheduling Order 2:22–3:3, ECF No. 13); (Mins. Proceedings, ECF No. 12). That same day, the Court filed an Emergency Order, (ECF No. 11), referring this case to the Pro Bono Program in order for Respondent to obtain counsel.

One day after the Court's case-management conference, Respondent obtained a guardianship order over Z.F.M.Z. from the Family Division of the Eighth Judicial District Court for Clark County, Nevada. (First R&R 7–10, ECF No. 35) (stating that Respondent obtained a temporary guardianship order on September 27, 2018). Petitioner soon after filed a motion to vacate that guardianship order. (Mot. Sanctions at 5, ECF No. 14); (Mot. Sanctions at 8–9, ECF No. 26).

On October 18, 2018, Richard C. Gordon, Adam Q. Tully, and Evan G. Hall, with the law firm of Snell & Wilmer, L.L.P., appeared as Respondent's pro bono counsel. (Notices of Appearance, ECF Nos. 20–22). The Court then held an evidentiary hearing on the merits of this case on November 9, 2018, with Judge Hoffman presiding. (Mins. Proceedings, ECF No. 46). Judge Hoffman filed a Report and Recommendation concerning the merits of Petitioner's Complaint on November 29, 2018. (Second R&R, ECF No. 56), which recommended, among

other things, that the Court grant Petitioner's Complaint pursuant to the Hague Convention, and order Respondent to return Z.F.M.Z to Mexico. (*Id.* 22:17–25).  Respondent thereafter filed a timely Objection to that Report and Recommendation. (Obj., ECF No. 60).  On April 16, 2019, the Court held a hearing for oral argument to address that Objection and an earlier Objection to a separate Report and Recommendation. (Mins. Proceedings, ECF No. 81).

## II.    LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1–4. 28 U.S.C. § 636(b)(1)(B); D. Nev. Local R. IB 3-2.  Upon the filing of such objections, the Court must make a *de novo* determination of those portions of the Report to which objections are made. *Id.*  The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. Local R. IB 3-2(b).

## III.   DISCUSSION

### A. Respondent's Objections to the First R&R

Judge Hoffman's First R&R addressed the validity of Respondent's guardianship order over Z.F.M.Z. (First R&R 4:18–19, ECF No. 35).  Judge Hoffman recommended vacating the guardianship order for two reasons: (1) the guardianship order conflicts with the prohibition on deciding the merits of custody rights over a child during on-going judicial proceedings under the Hague Convention; and (2) Respondent used the guardianship order to subvert the Court's visitation schedule for Z.F.M.Z. (*Id.* 4:18–5:2).  In recommending that the Court vacate Respondent's guardianship order, Judge Hoffman relied on Article 16 of the Hague Convention. (*Id.* 3:8–18, 4:18–25).  Article 16 provides that, "until it has been determined that the child is not to be returned under this Convention," the administrative authorities of the State to which the child has been removed or retained "shall not decide on the merits of rights of custody." Hague Convention, art. 16, 19 I.L.M. at 1503.

Respondent objects to Judge Hoffman's First R&R on the limited ground that it improperly conflates Respondent's guardianship rights with custody rights. (Obj. 3:1–19, ECF No. 55).   That is, according to Respondent, the guardianship order does not conflict with Article 16 of the Hague Convention because it does not decide custody over Z.F.M.Z; the guardianship order merely grants Respondent the ability to do "necessary things" for Z.F.M.Z., such as "register [her] for school . . . obtain medical care . . . and protect [her] personal and real property." (*Id.* 3:1–10).   Respondent concedes, however, that the guardianship order cannot be used to frustrate the Court's visitation schedule. (*Id.* 3:17–19).

The Court agrees with Judge Hoffman's First R&R, and finds that Respondent's guardianship order should not have been granted during the pendency of this case.   While Respondent's guardianship order does not directly decide final custody over Z.F.M.Z., the Nevada Supreme Court in *Sell v. Diehl* recently explained that "a guardianship matter necessarily implicates physical and legal custody." 431 P.3d 38, at \*2 n.2 (Nev. 2018) (unpublished).   Indeed, under Nevada law, a guardian retains powers related to "the care, custody and control of the . . . protected person." Nev. Rev. Stat. 159.079; Nev. Rev. Stat. 159A.079; *see Mendive v. Third Judicial Dist. Court in & for Lander Cty.*, 253 P.2d 884, 889 (Nev. 1953).   Moreover, Respondent provides no assurances that her guardianship order cannot affect custody over Z.F.M.Z.   Rather, the facts in this case reveal otherwise.   Respondent attempted to use the guardianship order as a shield from complying with the Court's visitation schedule, which frustrated Petitioner's visitation attempts with Z.F.M.Z.

Therefore, Respondent's guardianship order, in essence, conflicts with Article 16 of the Hague Convention.   Such conflict requires the current guardianship order to be vacated. *See Mozes v. Mozes*, 239 F.3d 1067, 1085 (9th Cir. 2001).

Importantly, vacating Respondent's current guardianship order is strictly limited to the reasoning that it was granted prematurely, since it arose prior to a decision on the petition's

merits under the Hague Convention. The Court in no way intends to constrain Respondent from seeking another guardianship order. In other words, because this Order resolves the underlying petition for return of Z.F.M.Z. to Mexico as stated below, Article 16 of the Hague Convention does not prevent Respondent from hereafter obtaining a guardianship order over Z.F.M.Z through proper methods. The Court finds that vacating the current guardianship order is still necessary, however, out of caution that the improperly obtained order could inhibit final custody proceedings. *See* Hague Convention, art. 16, 19 I.L.M. at 1503 (explaining that no determinations on the merits of rights of custody shall occur "until it is has been determined that the child is not to be returned under this Convention"); *Sell*, 431 P.3d 38 at *1, *2 n.2 (Nev. 2018) (noting the termination of existing guardianship rights as a part of a decision to ultimately award custody). This is especially true given Petitioner's allegations that Respondent obtained the guardianship order by failing to disclose significant information to the District Court of Clark County at the time of the guardianship petition. (Resp. at 6, ECF No. 57) (raising concerns because Respondent "denied that she was 'a party to pending criminal or civil litigation'" and "denied that there was a current custody order for the child").

### B. Respondent's Objections to the Second R&R

Judge Hoffman's Second R&R made findings and recommendations on the merits of the petition for return of Z.F.M.Z. to Mexico under the Hague Convention. (Second R&R 11:6–2). The Second R&R also resolved Petitioner's motion to strike a portion of Respondent's post-trial brief. (*Id.* 21:9–14). The below discussion addresses each issue in turn.

On the merits of the petition, Judge Hoffman concluded that Petitioner "established by a preponderance of the evidence a claim for return of [Z.F.M.Z.] to Mexico under the Hague Convention." (Second R&R 12:9–13). Specifically, Judge Hoffman found that "petitioner had custody rights and was exercising those rights at the time respondent absconded from the Mexican court's jurisdiction and wrongfully retained [Z.F.M.Z.]." (*Id.*). The basis for this

finding was Respondent's concession that Mexico was Z.F.M.Z.'s habitual residence, and Petitioner had been exercising custody rights in Mexico at the time of the wrongful act. (*Id.* 11:14–16, 12:1–2); *see* Hague Convention, Art. 3, 19 I.L.M at 1501; *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001) (explaining that an act is "wrongful" under the Hague Convention when the petitioner's rights "were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.").

At this stage, Respondent does not present a direct objection to the finding that Petitioner proved her case-in-chief by a preponderance of the evidence. (*See* Obj 2:3–4:20, 11:22–12:5, ECF No. 60). Rather, Respondent presents various objections based on "exceptions that apply in this case and that allow Z.F.M.Z. to remain safely in the United States with [Respondent]." (*Id.* 2:2–6, 2:22–23).

Respondent's first objection to the Second R&R concerns the conclusion that this case is based on Respondent's "wrongful retention" of Z.F.M.Z. in the United States, rather than "wrongful removal" of Z.F.M.Z. from Mexico. (*Id.* 13:12–17:25). The focus of Respondent's objection to classifying this case as one of wrongful retention lies with that classification's practical effect on Respondent's timeliness defense pursuant to the Hague Convention. (*Id.*).

### i. *Wrongful Removal Versus Wrongful Retention*

Typically, wrongful removal refers to the respondent unilaterally taking the child out of their habitual residence in violation of the petitioner's rights and without the petitioner's permission. *Cf. Lozano v. Montoya Alvarez*, 572 U.S. 1, 9 (2014). By contrast, wrongful retention most often refers to the respondent keeping the child out of their habitual residence beyond the time authorized by the petitioner. *Silverman v. Silverman*, 338 F.3d 886, 897 (8th Cir. 2003); *cf. Mozes*, 239 F.3d at 1070–71, 1084–85.

Determining whether a case is based on wrongful removal rather than retention not only decides the wrongful conduct at issue, but it also dictates the timeliness of a petition pursuant to

the Hague Convention. A petition filed less than one year from wrongful removal or retention

generally requires return of the child to her country of habitual residence. *See* Hague

Convention, art. 1, I.L.M. at 1501; *see also Abbott v. Abbott*, 560 U.S. 1, 7, 8, 20 (2010).

Conversely, a petition filed more than one year after wrongful conduct is subject to a "well-

settled" defense under Article 12 of the Hague Convention—a defense that permits courts to

depart from the general mandate of "order[ing] the return of the child." *Lozano v. Montoya

Alvarez*, 572 U.S. 1, 19 (2014) (Alito, J., concurring) (noting the majority's recognition that a

petition filed after one year has elapsed "opens the door to consideration of . . . the child's

interest in settlement"); *see* Hague Convention, art. 12, 19 I.L.M at 1502 ("where proceedings

have been commenced after . . . . one year . . . [the Court] shall . . .  order the return of the

child, unless it is demonstrated that the child is now settled in its new environment."). The one-

year period pursuant to Article 12 of the Hague Convention is not subject to equitable tolling.

*Lozano*, 572 U.S. at 18.

Judge Hoffman's Second R&R considered this case as one of wrongful retention

because Respondent held "provisional custody" on August 11, 2017, until September 8, 2017;

and Respondent "wrongfully retained" Z.F.M.Z. in the United States when Respondent failed

to appear at the Jalisco court's custody hearing on September 8, 2017. (Second R&R 14:2–4).

("[R]espondent's failure to appear at the court-ordered hearing on September 8, 2017, was the

earliest unequivocal act when petitioner should have known that respondent had wrongfully

retained [Z.F.M.Z.]."). The Second R&R alternatively noted that Respondent's intent to

remain in the United States became "unequivocally clear" when the Jalisco court received a

letter from Respondent on September 13, 2017, declaring her intention to remain in Las Vegas

with Z.F.M.Z. (*Id.* 14:4–7). The commencement date for the one-year period under Article 12,

according to the Second R&R, thus began on September 8, 2017, or, at the latest, on September

13, 2017. (*Id.*). Based on those dates, the petition was timely filed. (*Id.* 14:7–8).

However, upon *de novo* review of the facts in this case, the Court finds that this matter is one of wrongful removal. Though Respondent failed to appear at the Jalisco court's hearing on September 8, 2017, and subsequently notified the Jalisco court on September 13, 2017, that she would not be returning to Mexico with Z.F.M.Z., Respondent had no right to take Z.F.M.Z. to the United States. Indeed, on August 30, 2017, Petitioner notified the Jalisco court that Respondent had wrongfully left Mexico with Z.F.M.Z. (Jalisco Court Order at 3, Ex. 8 to Petitioner's Resp., ECF No. 69-6); (Second R&R 4:20–21). The Jalisco court then entered an order that same day imposing travel restrictions on Respondent, preventing her from leaving Mexico with Z.F.M.Z. during the pendency of custody proceedings.[2] (Jalisco Court Order at 3, Ex. 8 to Petitioner's Resp., ECF No. 69-6); (Second R&R 4:20–21). As Petitioner states in her verified petition, "Petitioner never acquiesced or consented to the relocation of Z.F.M.Z. in the United States." (Pet. at 8, ¶ 38, ECF No. 1). Moreover, Respondent's provisional custody over Z.F.M.Z. between August 11 and September 8, 2017, only allowed Respondent to obtain a psychological report of Z.F.M.Z., with no facts showing a corresponding right to leave Mexico to seek that report. (Jalisco Court Order at 2, Ex. 7 to Petitioner's Resp., ECF No. 69-8); (Second R&R 4:10–25). Respondent's relocation of Z.F.M.Z. in the United States—without permission from Petitioner nor the Jalisco court, and in violation of Petitioner's existing rights—therefore constitutes wrongful removal as of August 30, 2017.

Because the Court finds that this case arises from Respondent's wrongful removal of Z.F.M.Z. as of August 30, 2017, the petition for return of Z.F.M.Z. to Mexico was not timely filed with the Court within one year of the wrongful act that forms the basis of this case. (Pet.,

---

[2] Respondent states that she actually left Mexico with Z.F.M.Z. on August 25, 2017, on a flight from Guadalajara, Mexico to Las Vegas. (Obj. 16:26–27 n.25, ECF No. 60). However, the Jalisco court's order lists August 30, 2017, as the date that Respondent "did not comply with the secure order . . . and left out of the territory with the minor Z.F.M.Z." (Appeal Resolution at 4, Ex. 9 to Petitioner's Resp., ECF No. 69-10). The Court therefore uses the later date of August 30, 2017, as the operative one to consider Respondent's wrongful removal of Z.F.M.Z. from Mexico.

ECF No. 1) (filed on September 7, 2018); 22 U.S.C. § 9003(f)(3); *see, e.g.*, *Muhlenkamp v.*

*Blizzard*, 521 F. Supp. 2d 1140, 1152 (E.D. Wash. 2007) ("The petition must be filed with the

court of record, not the Central Authority, to file within the one-year limitation."). The next

inquiry, then, is whether Z.F.M.Z. is "well-settled" in the United States. *See* Hague Convention,

art. 12, 19 I.L.M at 1502.

### ii.    *The Well-Settled Defense*

In the Second R&R, Judge Hoffman found that Respondent proved, by a preponderance

of the evidence, that Z.F.M.Z. is "well-settled" in the United States pursuant to Article 12 of the

Hague Convention. (Second R&R 15:27–16:8, ECF No. 56). Judge Hoffman based that

finding on a thorough analysis of testimony from Z.F.M.Z., Z.F.M.Z.'s cousin, and Z.F.M.Z.'s

teacher in Las Vegas. (*Id.* 15:14–16:2).

No party objected to Judge Hoffman's finding that Z.F.M.Z. is presently "well settled"

in the United States. The Court can therefore accept Judge Hoffman's findings on this issue

without further examination. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) (explaining that the

Court need not make "any review at all . . . of any issue that is not the subject of an objection");

*United States v. Reyna–Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003).

### iii.    *Discretionary Return of Z.F.M.Z. to Mexico*

Because Z.F.M.Z. is well-settled in the United States, the Hague Convention does not

mandate the return of Z.F.M.Z. to Mexico for custody proceedings. *See* Hague Convention, art.

12, 19 I.L.M at 1502. Nevertheless, Petitioner argues that even if Z.F.M.Z. is well-settled, the

Court can still order her return to Mexico based on equitable considerations surrounding

Respondent's wrongful acts. Specifically, Article 18 of the Hague Convention states "the

provisions of this Chapter do not limit the power of a judicial or administrative authority to

order the return of the child at any time"; and courts interpret Article 18 as allowing the return

of a well-settled child if warranted by the circumstances of the case. *In re B. Del C.S.B.*, 559

F.3d 999, 1016 (9th Cir. 2009); *Margain v. Ruiz-Bours*, 592 F. App'x 619, 621 (9th Cir. 2015); *Lozano*, 572 U.S. at 20, 23 (Alito, J., concurring); *Fernandez v. Bailey*, 909 F.3d 353, 362 (11th Cir. 2018). However, as explained below, the facts surrounding this case do not warrant such discretionary action.[3]

In deciding whether to order the return of Z.F.M.Z. to Mexico although she is well-settled in the United States, the Court's analysis begins with whether Respondent concealed Z.F.M.Z.'s whereabouts after the wrongful removal. *Lozano*, 572 U.S. at 24 (Alito, J., concurring) (noting that "concealment is a significant factor and should weigh heavily in a court's analysis . . . ."); *In re B. Del C.S.B.*, 559 F.3d at 1016. Even if evidence of concealment were to be present, however, it would not definitively demand Z.F.M.Z.'s return. Rather, evidence of concealment can be overcome by "the extended length of the child's residence in this country, any strong ties the child has formed here, and the child's attenuated connections to his or her former country." *Lozano*, 572 U.S. at 24 (Alito, J., concurring); *see In re B. Del C.S.B.*, 559 F.3d at 1016. For example, in *In re B. Del C.S.B.*, the ninth circuit declined to order the return of a well-settled child after explaining that there was "no showing of 'concealment' such that the reprehensibility of the abducting parent's conduct should trump the finding that the child is 'settled.'" *See id.* Further, the child had been settled in her new environment "for years." *Id.* The circuit thus found that there was "no reason justifying an exercise of discretion under Article 18 to order [the child's] return to Mexico." *Id.*

---

[3]  Petitioner proposes that Judge Hoffman should make the initial decision on whether Z.F.M.Z. should be returned to Mexico even though she is well-settled in the United States; and Judge Hoffman's initial decision could be reviewed *de novo* were any objection to arise. (Resp. at 15–16, ECF No. 69). The Court rejects Petitioner's proposal, as it would unnecessarily delay proceedings in this action—proceedings that have likely created further distress to Z.F.M.Z., and stoked significant tension among all interested parties in this matter. *Cf. In re B. Del C.S.B.*, 559 F.3d 999, 1015 (9th Cir. 2009) ("[T]he existing record contains sufficient factual findings to support a decision by this court without remand; and *Mozes* counsels us to address whatever issues we may dispose of, "[g]iven the need to resolve these regrettably prolonged proceedings as expeditiously as possible. . . .") (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1084 (9th Cir. 2001)). The record created in Judge Hoffman's evidentiary hearing provides ample evidence for the Court to decide this issue during its *de novo* review of Respondent's current objections to the R&Rs.

The eleventh circuit's decision in *Fernandez v. Bailey*, 909 F.3d 353 (11th Cir. 2018),

provides a converse example from that in *In re B. Del C.S.B.*, by revealing when circumstances

warrant the return of a well-settled child. The *Fernandez* court concisely stated the "unique

facts" which supported its decision: "a second wrongful removal within five years in violation

of a court-ordered exit restriction," "the second time that the father, from abroad, has had to

petition a federal district court under the [Hague] Convention for the return of the boys to their

habitual residence in Panama," "the ongoing involvement of Panamanian courts in child

custody issues, and the father's inability to come to the United [States] to see his boys or to

litigate custody issues in person." *Fernandez*, 909 F.3d at 364–65. Consequently, the eleventh

circuit found that discretionarily ordering return of the well-settled children aligned with the

"aims and objectives of the Convention" under the "unique" circumstances. *Id.* at 365–66.

Here, Judge Hoffman's factual findings on the "well-settled" issue, alongside evidence

presented during the evidentiary hearing, guide the Court's discretionary decision to not order

the return of Z.F.M.Z to Mexico. Specifically, Judge Hoffman highlighted testimony from

Z.F.M.Z.'s teacher in Las Vegas, which revealed Z.F.M.Z.'s significant improvement in

English, her participation in school activities, and several school awards that she achieved.

(Second R&R 14–26). Testimony from the evidentiary hearing also revealed how Z.F.M.Z. has

made "three best-friends" in her new environment, and that Z.F.M.Z has family in the United

States that supports her academic and recreational interests. (*Id.* 15:14–23). Judge Hoffman

thus concluded that Z.F.M.Z. "has established significant connections to Las Vegas." (*Id.*

15:28–16:2). Notably, Petitioner made no objections to the findings by Judge Hoffman

discussed above, which obviates a need to re-analyze them at this stage. *See Thomas*, 474 U.S.

at 149.

Additionally, the record does not reveal an effort to conceal Z.F.M.Z. after her entry into

the United States. Petitioner knew of Respondent's travel to the United States as early as

August 30, 2017; and Petitioner promptly notified the Jalisco court about that action. (Jalisco Court Order at 3, Ex. 8 to Petitioner's Resp. (Trial Exhibit 14), ECF No. 69-9); (Second R&R 4:20–21) (citing Ex. 14 at Castro 000097).  Respondent also contacted the Jalisco court shortly after her travel to the United States, stating her intention to remain there with Z.F.M.Z., "precisely to Las Vegas, Nevada." (Official Communication at 6, Exhibit 11 to Petitioner's Resp. (Trial Exhibit 19), ECF No. 69-12).  Similar to *In re B. Del C.S.B.*, 559 F.3d 999, 1016 (9th Cir. 2009), concealment is not a factor here, and thus does not favor returning Z.F.M.Z. to Mexico now that she is well-settled in the United States.

Last, unlike in *Fernandez*, the party from whom the child was wrongfully taken (here, Petitioner) can litigate custody issues in the United States. *Compare Fernandez*, 909 F.3d at 365.  By contrast, Respondent provides evidence that, because she removed Z.F.M.Z. from Mexico amid custody proceedings in the Jalisco court, Respondent now has an outstanding warrant for her arrest in Mexico. (Obj. 22:21–23:1, ECF No. 60).  Respondent therefore would likely be severely limited in litigating custody in Mexico, if capable of litigating at all.  Further, Petitioner presented testimony from an expert in child psychology (Norton Roitman, M.D.), revealing an opinion that Z.F.M.Z. "lives in constant fear" of separation from Respondent. (Second R&R 7:17–19); (Trial Tr. at 192, Test. Dr. Roitman, ECF No. 47).  That fear of separation has previously manifested into physical symptoms of "nausea . . . vomiting, loss of appetite, [and] weight loss." (Second R&R 7:17–19); (Trial Tr. at 192, Test. Dr. Roitman).  Thus, Respondent's inability to be present for proceedings in Mexico would likely create extensive distress to Z.F.M.Z. were she to be returned without Respondent. (Tr. Tran. 195:18–196:9, Test. Dr. Roitman, ECF No. 47) ("I would predict that she would have depression and anxiety, a sense of loss, a feeling of insecurity about life . . . .").

Aside from the concerns that do not favor the discretionary return of Z.F.M.Z. to Mexico, several facts fall in the opposite direction.  First, Respondent removed Z.F.M.Z. during

1    custody proceedings in Mexico—raising concerns about her respect for court orders and

2    judicial proceedings.  Respondent similarly created conflicts surrounding the Court's visitation

3    schedule during the pendency of this case, which frustrated multiple visitation attempts by

4    Petitioner and suggests an attempt to establish barriers between Z.F.M.Z. and her family in

5    Mexico.  On balance of all facts surrounding this case, however, these facts do not reveal

6    conduct of such "reprehensibility" that would "trump the finding that the child is 'settled.'" *See*

7    *In re B. Del C.S.B.*, 559 F.3d at 1016.  While the Hague Convention seeks to prevent

8    Respondent's conduct, there is a countervailing interest here in preserving Z.F.M.Z.'s stability

9    during future custody proceedings and avoiding added distress that could arise by another

10   relocation. *Cf. Lozano*, 572 U.S. 1, 19 (Alito, J., concurring).

11       Accordingly, the Court will not discretionarily return Z.F.M.Z. to Mexico.[4] *See In re*

12   *Robinson*, 983 F. Supp. 1339, 1346 (D. Colo. 1997) ("[T]he Convention has essentially decided

13   that, once settled in the new environment, to again uproot the children would be harmful.  In

14   that sense the ultimate best interests of the children are served by denying the petition.").

15   Moreover, this Order is limited: it simply authorizes initiation of custody proceedings in the

16   United States, and establishes that Z.F.M.Z. will remain here throughout the duration of those

17   proceedings. *See* 22 U.S.C. § 9001(b)(4) ("The Convention . . . empower[s] courts . . . to

18   determine only rights under the Convention and not the merits of any underlying child custody

19   claims."); *see also Papakosmas v. Papakosmas*, 483 F.3d 617, 621 (9th Cir. 2007); *In re B. Del*

20   *C.S.B.*, 559 F.3d at 1016.  The Court accordingly denies the petition under the Hague

21   Convention.

22   _____

23   [4] In addition to the timeliness issue surrounding the petition for return of Z.F.M.Z., Respondent also objects to
     Judge Hoffman's findings on the "mature-child" defense and the "grave risk" defense pursuant to Article 13 of
24   the Hague Convention. (Obj. 18:7–24:14, ECF No. 60).  Those defenses are alternative grounds for the Court to
     not order the return of Z.F.M.Z. to Mexico. *See Lozano*, 572 U.S. at 5 (discussing the various exceptions to
25   return under Articles 12 and 13 of the Hague Convention).  Because the Court does not order the return of
     Z.F.M.Z. to Mexico pursuant to Article 12, the Court need not address Respondent's objections concerning those
     alternative defenses in Article 13.

**C. Sanctions Based on Post-Trial Briefing**

Following the evidentiary hearing in this matter, Judge Hoffman permitted the parties to submit post-trial briefs limited to five pages, which were due by November 14, 2018. (Mins. Proceedings, ECF No. 46). On November 15, 2018, Petitioner filed an Emergency Motion to strike Respondent's post-trial brief. (Em. Mot. Strike at 4, ECF No. 52). Petitioner argued that Respondent's post-trial brief exceeded the five-page limit, improperly attached exhibits, and was not submitted prior to 5:00 p.m. on the due-date. (*Id.* at 2–4). Accordingly, Petitioner requested several forms of relief, including the striking of "any portion of Respondent's Post-Trial Brief in excess of five pages . . . the striking of Respondent's appendix of Exhibits in support . . . [and] attorney's fees for having to file [the] Emergency Motion." (*Id.* at 4).

In the Second R&R, Judge Hoffman granted Petitioner's Emergency Motion. (Second R&R 21:10–22:14). Judge Hoffman accordingly recommended striking the portion of Respondent's post-trial brief that exceeded the first five pages, and awarded Petitioner "reasonable attorney's fees, to be paid by respondent's counsel." (*Id.*). Respondent then objected to those actions as "unduly harsh" against pro bono counsel. (Obj. 24:15–26:3, ECF No. 60).

The Court finds that Judge Hoffman properly struck the pages of Respondent's post-trial brief that exceeded the first five. Respondent concededly violated Judge Hoffman's five-page restriction on post-trial briefing. Though Respondent argues that the substantive portion of the post-trial brief was merely "5.75 pages long," Respondent does not argue that there was an attempt, and an absolute inability, to concisely place all substantive information within the specified page limits. (*See* Resp. 4:23–5:8, ECF No. 53). Striking the non-conforming pages is thus appropriate.

The Court does not accept Judge Hoffman's imposition of monetary sanctions against Respondent's pro bono counsel. Petitioner requested attorney's fees as part of the relief from

the Emergency Motion, but Petitioner's Reply in support of that Emergency Motion sought

relief only "by striking Respondent's post-trial brief." (Reply at 4, ECF No. 54). While

Petitioner need not renew the requested relief in each filing, the failure to do so here suggests

that Petitioner's focus was on limiting unapproved arguments, not monetary sanctions.

Additionally, Respondent's counsel now provides an explanation against monetary sanctions

that was not raised in briefing prior to Judge Hoffman's recommendation. Namely,

Respondent's counsel explains that monetary sanctions would be unduly harsh based on the

expedited status of this case, a need for Respondent's counsel to take the matter on a pro bono

basis merely weeks before trial when other firms would not, and the corresponding costs of

accelerated preparation "in excess of $100,000 at normal billing rates." (Obj. 25:6–21, ECF No.

60). These arguments persuade the Court against imposing monetary sanctions. *See* D. Nev.

Local R. IA 11-8 (stating that the Court may, "after notice and an opportunity to be heard,

impose any and all appropriate sanctions on an attorney or party who . . . Fails to comply with

any order of this court.").

### D. Motion to Hold Respondent in Contempt of Court

On April 11, 2019, Petitioner filed a Motion to Hold Respondent in Contempt of Court,

(ECF No. 80), based on Respondent's failure to comply with the court-imposed visitation

schedule during the pendency of this case. Petitioner's Motion is not ripe at this time, as the

deadline for Respondent's response is April 25, 2019. Though this instant Order decides the

merits of this matter under the Hague Convention, and thus closes the case, Petitioner's Motion

will remain viable. The current briefing schedule on Petitioner's Motion remains as it exists at

the present time.

///

///

///

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Respondent's Objection, (ECF No. 55), to the First R&R is **OVERRULED**.  The Court accordingly **ADOPTS** Judge Hoffman's First R&R. Respondent's current guardianship order over Z.F.M.Z. from the Family Division of the Eighth Judicial District Court for Clark County, Nevada is **VACATED**.  The Clerk of Court shall mail a copy of this Order to the Family Division of the Eighth Judicial District Court for Clark County, Nevada:

> Family Court and Services Center
> 601 North Pecos Rd., 1st Floor
> Las Vegas, Nevada 89101

**IT IS FURTHER ORDERED** that Respondent's Objection, (ECF No. 60), to the Second R&R is **SUSTAINED in part and OVERRULED in part**.  The Court accordingly **ACCEPTS in part** and **REJECTS in part** the Second R&R as stated in this Order. Petitioner's Verified Complaint and Petition for Return of Children, (ECF No. 1), is **DENIED**. The Court does not order the return of Z.F.M.Z. to Mexico.  The Court emphasizes that this Order is not a determination on the merits of any custody issues within the meaning of the Hague Convention.  Those issues are left to the appropriate court.

The Clerk of Court shall close the case.

**DATED** this __20__ day of April, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court